FILED
7/5/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

In The United States District Court
For The Northern District of Illinois

Page 1 of 21

GARY HANCOCK

v.

Case # 22-CV-50103

UNITED STATES; K. MILLER;
T. KINNICK; HSA TAYLOR;
DOCTOR MORGAN; FATEH HYDER

Defendants

RECEIVED
APR 27 2022
THOMAS G BRUTON
CLERK, U.S DISTRICT COURT

## Amended Complaint With Jury Request

Comes now the plaintiff, Pro Se, Filing this civil action under 28 U.S.C. §1346(b) (the Federal Tort Claims Act or FTCA) and under Bivens, 403 U.S. 388, alleging Medical negligence, Malpractice, and deliberate indifference to the serious Medical needs of the plaintiff. All events described in this Complaint occured at the Federal Bureau of Prisons (FBOP) United States Penitentiary (USP) in Thomson, IL.

## Jurisdiction

1. This Court has jurisdiction over the plaintiff's Claims Under 28 U.S.C. 1331 and 28 U.S.C. 1346(b).

## Parties

2. The plaintiff, Gary Warren Hancock, Jr., was incarcerated at the FBOP USP in Thomson, Illinois during the events described in this Complaint.

3. The United States of America is the only appropriate defendant for the claims bought under 28 USC 1346(b).

4. Defendant K. Miller is a nurse at the FBOP USP in Thomson, Illinois 61285. She is sued in her individual Capacity.

5. Defendant T. Kinnick is/was a "P.A.," which I believe is a nurse or a physician's assistant, in the Health Services Department at the FBOP USP in Thomson, IL 61285, at the time of the incidents in this Complaint. He is sued in his individual Capacity.



6.) Defendant HSA Taylor is the Health Services Administrator at the FBOP U.S.P. in Thomson, Illinois 61285. She is Sued in her individual Capacity.

7.) Defendant Doctor Morgan is a doctor employed by the FBOP North Central Regional Office, 400 State Ave, Tower II, Suite 800, Kansas City, KS 66101-2492. He is Sued in his individual Capacity.

8.) Defendant Fateh Hyder is a doctor employed by the FBOP North Central Regional Office, 400 State Ave, Tower II, Suite 800, Kansas City, KS 66101-2492. He or She is Sued in his or her individual Capacity.

## Exhaustion Of Administrative Remedies

9) The plaintiff has fully exhausted all administrative remedies, as required by the PLRA, prior to Filing this Civil action. For the Claims under the FTCA the plaintiff

Filed Administrative Claim # TRT-NCR-2021-05233, which was denied on 12/9/2021.

For the Constitutional Claims, Plaintiff filed two separate administrative remedies which both recently had a final decision made at the highest level of appeal. These are Remedy # 1085341-A1 and #1064215. Also, Admin. Claim # TRT-NCR-2021-05256 was denied by the FBOP North Central Regional Office

## Facts

10.) The plaintiff arrived at U.S.P. Thomson on 8/18/2020. At intake screening by Health Services I told the nurse that I was experiencing extreme abdominal pain that radiated to my back. The nurse failed to note this pain and told me to follow up at Sick-Call.

11.) After intake processing I was moved to A-Unit for quarantine. During the plaintiff's time in quarantine, he submitted several written requests stating that he was in pain (abdominal and back). None of these written Sick-Call requests were documented; they were all ignored.

This Constituted medical negligence.

12. On 9/8/2020 the plaintiff submitted the first of many emails to the Health Services Department at USP Thomson Complaining of "Severe pain in my right abdomen/intestine for over two years". (See EXHIBIT 1, Emails to Medical Staff). (Ex 1, Page 1)

13. Prior to arriving to USP Thomson, the plaintiff was housed at USP Lee, Virginia. At USP Lee the plaintiff had abnormal lab results ~~indicating~~ dated 5/13/2020 indicating "Suggestive of Celiac disease or other gluten-sensitive enteropathies".
    Please note that plaintiff was never notified of the abnormal lab results while at USP Lee; he was transferred to USP Thomson without knowing about the abnormal lab results. See EXHIBIT 2, Relevant Medical Records, page 1).

14. Plaintiff was not seen by medical Staff at USP Thomson until 10/6/2020 for this complaint of pain. This in itself Constituted an

Unconstitutional delay in Medical treatment. At the medical encounter on 10/6/20 the plaintiff explained to defendant Kinnick that, at that time, his pain was only a 6 on a Scale of 1-10 and that it often reached level 10; that Over the Counter (OTC) medication was no longer effective in treating the Condition; that he needed to see a specialist for this long-standing issue, and Kinnick refused to refer plaintiff to a specialist; And importantly, Kinnick overlooked the abnormal lab results indicating gluten Sensitivity, and ordered the plaintiff to Continue treating his Condition with OTC Medication.

15. Kinnick, on 10/6/20 Stated in record that "I will order a UA for due diligence." Plaintiff was Complaining of bowel problems and Kinnick ordered a Urinalysis. This was Medical negligence and Malpractice. Defendant Hyder is required to review the reports from lower-level medical Staff at USP Thomson and "co-sign"

them. Doctor Hyder Commited Malpractice/ negligence by endorsing misguided Medical reports from lower-level Medical staff. (See EXHIBIT 2, All Medical records bearing Hyder's name at end of report).

Kinnick, ~~overlooked~~ overlooking the already present abnormal lab results, should have ordered the "Bowel Disorder Cascade" that detected the source of plaintiff's ~~XXXX~~ pain.

16. Kinnick also refused to prescribe pain Medication for the plaintiff.

17. After an email to medical staff ~~X~~ dated 11/15/2020 Complaining of denial of Medical Care, the plaintiff was seen by defendant Miller on 11/17/2020 (See Exhibit 2, page 5-6).
Plaintiff explained to miller, Calmly, that he had been suffering this pain for over 2 years and that he had already spent hundreds on OTC Medication, ~~XXXX~~ and that OTC meds did not help with his Condition. Miller told plaintiff that it did

not matter that plaintiff had purchased OTC's at USP Lee, but that he had to purchase OTC's at USP Thomson before she could help the plaintiff, as if the plaintiff's statements to her, saying OTC's were innefective, were not good enough to reccommend a different course of treatment. This fell below the "standard of care" that medical personell generally owe to patients, and constituted the tort of negligence and deliberate indifference to the plaintiff's serious medical needs.

18. At the encounter with Miller on 11/17/20, Miller misrepresented what occured in her medical report making it seem that the plaintiff became beligerant after she gave the plaintiff good medical advice. The plaintiff admittedly became upset, but for good reason. (See Exhibit 1, page 3, email to Health Services complaining of encounter).

19. At a medical encounter with Nurse Starr on 12/14/2020 (Ex. 1, pg. 7-8) extreme

pain was noted but ~~the~~ Starr refused to order pain meds For the plaintiff, and tried to downplay severity of plaintiff's pain, the source of wich was noted in the yet undiscovered lab results.

20. While in the Special Housing Unit (SHU) in April of 2021, the plaintiff recieved a copy ~~~~ of his Medical records From defendants, in an unrelated civil action. This is when the plaintiff First became aware of the abnormal lab results From 5/13/2020.

21. Plaintiff showed nurse Bungard the abnormal lab results From USP Lee and Bungard documented this in plaintiff's Medical records dated 5/4/2021 (See Ex. 2, pg 13). Bungard noted plaintiff had level 8 pain but failed to presribe pain meds. This constituted negligence.

22. On 3/3/2021, Plaintiff met with Kinnick (prior to abnormal labs discovered). Kinnick noted plaintiff's extreme pain and again refused to give the plaintiff pain Medication. Kinnick again overlooked the abnormal lab

results from 5/13/2020.

23. On 5/24/2021 Plaintiff Complained to Nurse Wierma about extreme ~~pain~~ pain. Wierma Failed to order pain meds for plaintiff. This was negligence.

24. On 6/3/2021, plaintiff met with Kinnick again. At this visit Kinnick had been made aware of abnormal labs (through no effort of his own). Plaintiff told Kinnick that his pain was so bad that it was difficult for him to roll over at night. (See Ex. 2, pg 19-21) Kinnick again refused to prescribe pain Medication.

25. On 6/3/2021 plaintiff told Kinnick that avoiding gluten reduced his pain, improved Color of previously pale stools, and made plaintiff feel better; also that he was hungry all the time because he Couldn't eat all the Food on the prison trays. Plaintiff asked Kinnick to prescribe him a gluten-Free medical diet, Kinnick refused. This

Constituted deliberate indifference and Medical negligence because "gluten-Sensitivity" is diagnosed by a patients response to a gluten-Free diet. The "Standard Of Care" requires the Medical provider to test patients response to a Gluten-Free diet. If Kinnick and Hyder knew this they would've prescribed a gluten-free (GF) diet at that time. Both defendants were negligent.

26. On 6/3/2021 Kinnick also refused to refer the plaintiff to a gastro-intestinal (GI) specialist.

27. On 6/23/2021 the plaintiff saw defendant Dr. Morgan via video Conference. Plaintiff told Dr. Morgan about severe pain, Constipation, and how avoiding gluten improved all related symptoms. Morgan refused to order pain Meds For the plaintiff; he also refused to order a GF diet For plaintiff, Causing him to suffer 5 more months on the prison diet Containing gluten.

28. On 7/9/21 Morgan noted plaintiff's Chronically low White blood Cell Count but failed to run more tests to determine why.

29. On 10/29/21 the plaintiff visited Sick-Call Complaining of severe abdominal/back pain. Nurse Horst refused to order pain meds for the plaintiff.

30. The plaintiff was finally sent outside the Prison to a GI specialist who diagnosed the plaintiff with "gluten-Sensitivity" in a report dated 11/17/2021. (See Ex. 2, pg 35-36). The GI specialist ordered a GF diet for the plaintiff as plaintiff explained that prison Medical staff refused to do it. (See Ex. 2, pg. 40)

31. The plaintiff explained to Medical staff, in multiple emails, the difference between Celiac disease and "non-Celiac gluten Sensitivity" (See Ex. 1, pg.) Particularly, this was explained to defendant taylor. Taylor refused to instruct Medical staff to order pain

Medication for plaintiff, a GF diet, and told the plaintiff he'd have to wait at least 6 months to see a GI specialist. (see Exhibit 10, pg. 7-8). (Ex. 1, pg 7-8)

32. Exhibit 1, the plaintiff's emails to Health Services personnell, paint a clear picture of this ordeal and how all defendants showed deliberate indifference to plaintiff's serious Medical needs, delayed Medical treatment excessively so, and Committed the torts of Negligence and Malpractice.

33. This entire ordeal of suffering through Months and Months in extreme pain, without pain Medication, and not Knowing the Cause of the pain (when the answer was in the Medical records all along) Caused the plaintiff extreme Mental anguish, emotional distress, and depression and hopelessness.

## Denial of Prescription Medications

34. On 4/13/2021 I was taken to the Special Housing Unit (SHU) which is used for administrative and disciplinary segregation. On 4/13/2021 a Mass "shakedown", or Cell-Search, was Conducted and all prisoners

were ordered to leave A-Housing Unit.

35. Before leaving A-Unit, the plaintiff secured his two prescription medications in his locker. The Plaintiff was prescribed Levitiracetam for seizures and Sertraline for depression.

36. The plaintiff was never allowed to return to his cell to secure his medications before being taken to the SHU on 4/13/21 for alleged contraband (charges for which he was later acquitted).

37. After being taken to SHU, staff failed to bring the plaintiff his prescription medications. The next morning on 4/14/2021, the plaintiff gave a written request for his medication to the nurse making rounds that morning. This nurse is named on the Administrative Claim but the plaintiff cannot see the name due to redactions from FOIA copy of the claim. In this request, the plaintiff explained that his medications were lost in the shakedown and needed to be replaced. Camera footage should show the nurse taking this request from the plaintiff's assigned cell on 4/14/2021 during morning medication rounds

38.) Over the course of the next week The plaintiff gave written requests to multiple nurses who are identified in the Administrative Claim.

39. The plaintiff was denied his prescription Medication From 4/13/2021 until 4/21/2021.

40. In the plaintiff's written requests to Medical staff he told them that he was suffering withdrawal Symptoms from not having his Medications. The plaintiff suffered painful headaches daily, insomnia, Confusion, Fatigue, abdominal pain, hopeless depression, (relapse into depression), Suicidal thoughts, and frequent Myoclonic Seizures including violent night Convulsions/seizures while sleeping.

41. The plaintiff's Symptoms worsened daily over the course of the 8 days without his Medications.

42. All of these physical and psychological Symptoms Caused the plaintiff to experience Severe Mental anguish and debilitating depression.

43. Medical records should show that the plaintiff's Medications were refilled on or about 4/21/2021 when he was finally

given his prescription medications.

44. The plaintiff's cell-mate at the time, Derrick Freeman can bare witness to the fact that the plaintiff was denied his medication during the stated dates.

## Claims For Relief

45. The nurses' failure to note the plaintiff's complaints of abdominal pain and back pain at the intake screening on 8/18/2020 constitute the tort of Medical negligence and violated the FBOP's "duty of Care" under 18 U.S.C. 4042 (a), (henceforth simply "duty of Care.").

46. At the plaintiff's Medical encounters with Kinnick on 10/6/2020 and 3/3/2021, Kinnick's failure to review plaintiff's medical records and locate the abnormal lab results from 5/13/2020 constituted the tort of medical negligence and the tort of Malpractice on the part of defendant Hyder for approving (co-signing) Kinnick's medical reports. This also violated the FBOP's duty of Care.

47. Kinnick's constant refusal to prescribe pain medication for the plaintiff constituted

deliberate indifference to the serious Medical needs of the plaintiff in violation of the 8th Amendment to the United States Constitution (henceforth simply "deliberate indifference"); This also constituted the torts of Medical negligence and Malpractice on the part of Kinnick and Hyder. This also constituted deliberate indifference on Hyder's part and violated the FBOP's duty of Care.

48. Kinnick's refusal, and Hyder's approval of the refusal to pursue a course of treatment besides OTC Medication and alternative diagnostic testing, after being told that OTC's weren't effective, Constituted deliberate indifference, Medical negligence and Malpractice, and violated the FBOP's duty of Care.

49. Kinnick's refusal, and Hyder's approval of the refusal to refer plaintiff to a gastro-intestinal Specialist Constituted deliberate indifference, the torts of Medical negligence and Malpractice, and violated the FBOP's duty of Care.

50. Kinnick's order of a UA (urine test), and Hyder's approval of the order for a UA when the plaintiff was Complaining of

bowel problems and pain, and their failure to order a "bowel disorder cascade" (the blood test which detected the problem on 5/13/2020) constituted the torts of medical negligence and malpractice and violated the FBOP's duty of care.

51. Miller's failure to review the plaintiff's medical records and locate the abnormal lab results from 5/13/2020 constituted the tort of medical negligence and violated the FBOP's duty of care.

52. Miller's refusal, and Kinnick's and Hyder's approval of the refusal to order pain medication for the plaintiff constituted deliberate indifference and the torts of medical negligence and malpractice, and violated the FBOP's duty of care.

53. Miller's refusal, and Kinnick's and Hyder's approval of the refusal to reccoment an alternative to OTC medication, after the plaintiff told her that OTC's were not effective, constituted deliberate indifference, the torts of medical negligence and malpractice, and violated the FBOP's duty of care.

54. Nurses Starr, Wierema, Horst, and Bungard all committed the tort of medical

negligence by refusing to provide pain medication to the plaintiff after being told that the plaintiff was suffering extreme pain. This also violated the FBOP's duty of care.

55. Kinnick's refusal, and Hyder's approval of the refusal to order a gluten free diet for the plaintiff, after becoming aware of plaintiff's reported sensitivity to gluten-containing foods and abnormal blood labs from 5/13/2020, constituted deliberate indifference and the torts of medical negligence and malpractice, as well as violated the FBOP's duty of care.

56. ~~Kinnick and Hyder's~~ Doctor Morgan's refusal to order a gluten-free medical diet for the plaintiff, causing him to suffer (approximately) an additional 5 months without the diet, constituted deliberate indifference, the torts of medical negligence and malpractice, and violated the FBOP's duty of care.

57. The combined actions and omissions of all defendants constituted deliberate indifference and resulted in an "unconstitutional delay" in treating the plaintiff's medical condition(s).

58. Defendant Taylor's refusal of plaintiff's requests to expedite getting him to a G.I. Specialist; for pain medication; and for a gluten-free diet while awaiting the Specialist Consult, all constituted deliberate indifference, the torts of medical negligence and malpractice, and violated the FBOP's duty of care.

59. Health Services staff's failure to ensure that the plaintiff had his doctor-prescribed medications between 4/13/2021 and 4/21/2021, as well as the failure to document the plaintiff's multiple requests for his medications and complaints of withdrawal symptoms, all constituted the torts of medical negligence and malpractice and violated the FBOP's duty of care, as well as deliberate indifference.

### Relief Requested

WHEREFORE, the plaintiff asks that the Court grant the following relief:

A. Issue a declatory judgement stating that the actions of the defendants all (or in part) constituted deliberate indifference, the torts of medical negligence and malpractice, an unconstitutional delay in medical treatment, and violated the FBOP's duty of care under 18 USC 4042(a).

B. Award compensatory damages, punitive damages, and (if applicable) nominal damages jointly and severally against all named defendants.

21 of 21

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge, and understanding.

Respectfully Submitted,

4/22/2022

Gary Hancock 56765-037
USP Thomson
P.O. Box 1002
Thomson, IL 61285