# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

| | |
|---|---|
| Gary Hancock, | |
| Plaintiff, | |
| | Case No. 3:22-cv-50103 |
| v. | |
| | Honorable Iain D. Johnston |
| United States, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gary Hancock, a federal prisoner, brings this action against the United States and individual medical providers (Defendants) under the Federal Tort Claims Act (FTCA) and *Bivens* alleging negligence, malpractice, and deliberate indifference to serious medical needs during his incarceration at then USP Thomson. Hancock alleges that Defendants knew he suffered from extreme abdominal pain but failed to take appropriate steps to address it. He also alleges that Defendants failed to provide him with his medication while he was held in Thomson's Special Housing Unit.

Hancock's retained opinion witness is Dr. Susan E. Lawrence. She is board certified in internal medicine and is a former medical director of a federal detention facility with over forty years of experience in the medical field. After reviewing medical records, depositions, and other materials, Dr. Lawrence reached several different conclusions about the medical care Defendants provided Hancock.

1

Defendants seek to bar Dr. Lawrence's opinions under *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). They also seek to bar the testimony of certain other fact witnesses. For the reasons that follow the Court grants the motion in part and denies the motion in part.

## I. Discussion

### A. Legal Standards for Daubert Motion

According to Federal Rule of Evidence 702:

> [A] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The district court is tasked with ensuring that only relevant and reliable opinion testimony is presented to a jury. *Daubert*, 509 U.S. at 597; *Lees v. Carthage Coll.*, 714 F.3d 516, 521 (7th Cir. 2013). The proponent carries the burden of establishing the admissibility of evidence by the preponderance of the evidence. *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 782 (7th Cir. 2017). A district court has significant discretion in performing the required *Daubert* analysis, but it must perform the analysis in some depth. *Id.* at 784. It must carefully consider "(1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Id.* at 779.

### B. Dr. Lawrence's Opinions

Defendants object to the admissibility of Dr. Lawrence's top-line conclusions and several secondary statements on the grounds that she is not qualified to be an expert, that she offers improper legal conclusions, that she fails to appropriately opine as to the standard of care, and that her disclosures fall short of the requirements of the Federal Rules of Civil Procedure.

### a. Dr. Lawrence is Qualified to Offer the Opinions

An expert witness may only offer testimony if they are qualified by "knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. The issue isn't whether an expert is qualified generally, but whether they have the qualifications to reach each proffered conclusion. *United States v. Truitt*, 938 F.3d 885, 890 (7th Cir. 2019). "[O]rdinarily, courts impose no requirement that an expert be a specialist in a given field." *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) (citation omitted). "The fact that an expert may not be a specialist in the field that concerns her opinion typically goes to the weight to be placed on that opinion, not its admissibility." *Hall v. Flannery*, 840 F.3d 922, 929 (7th Cir. 2016).

Dr. Lawrence received her medical degree in 1978. Dkt 116-1 at 2. She has been board certified in internal medicine since 1983 and in medicinal oncology since 1985. *Id.* She was in private practice as a medical oncologist from 1985 to 1992. *Id.* From 1992 to 2011 she focused on providing cancer treatment to the HIV/AIDS population. *Id.* She also served, from 2013 to 2016, as a staff physician and medical director at the Adelanto Detention Facility, a federal detention facility. *Id.* In that

role she supervised nurses and provided primary and supervisory care for detainees with medical problems that included gastrointestinal disorders. *Id.* at 2-3.

Defendants point out, accurately, that Dr. Lawrence isn't a gastroenterologist. This means, they contend, that "she should be barred from testifying as to any gastroenterology diagnosis, what testing is appropriate to determine if Hancock has celiac disease or non-celiac gluten sensitivity, the standards for diagnosing these conditions, and the proper treatment for these conditions. . . ." Dkt. 165 at 5. Defendants also argue that Dr. Lawrence can't testify as to whether any particular tests are the "gold standard" for diagnosing celiac disease. *Id.* at 7.

Although the record is relatively sparse on the issue, Dr. Lawrence has experience treating and managing GI disorders in both the prison setting and outside of it. Dkt. 116-1 at 2. Her testimony on the level of expertise that is required is decidedly mixed. On the one hand, she testified that "celiac disease is a condition that internists also treat... celiac disease is something that's in the purview of internal medicine as well." Dkt. 165-1 104:2-6. On the other hand, she also testified that celiac diagnosis and treatment would be for a gastroenterologist. *Id.* at 104:15.

Given the subject of Dr. Lawrence's opinions and her background and experience, she is qualified to opine about the diagnosis, testing, and treatment of celiac disease and non-celiacs gluten sensitivity. Dr. Lawrence isn't making a diagnosis. Knowledge about *how* celiac disease and non-celiac gluten sensitivity are tested, diagnosed, and treated isn't "specialized knowledge held only by

4

[gastroenterologists]." *Gayton*, 593 F.3d at 618. It's general medical information well within Dr. Lawrence's wheelhouse as an internal medicine practitioner.

Defendants also object to Dr. Lawrence's critique of Dr. Olney. Specifically, Defendants argue that Dr. Lawrence only bases her opinion of Dr. Olney— specifically that Olney's order of a gluten-free diet for Hancock delayed Hancock's treatment—on Dr. Shadid's deposition testimony. An expert can't merely relay the opinion of another expert when that expert has a different specialty. *Dura Auto. Sys. of Ind., Inc. v. CTS Corp.*, 285 F.3d 609, 614 (7th Cir. 2002); *Sommerfield v. City of Chicago*, 254 F.R.D. 317, 324 (N.D. Ill. 2008); *see also Agnew v. Carter*, 18-cv-50035, 2022 U.S. Dist. LEXIS 18734, at \*19-21 (N.D. Ill. Feb. 2, 2022).

Dr. Lawrence's opinion isn't entirely clear on the subject. She describes Dr. Shadid's testimony at the end of a paragraph explaining that a gluten-free diet would confuse Hancock's diagnosis. *See* Dkt. 116-1 at 20-21. She doesn't note if she relies on it. Earlier in the report, Dr. Lawrence notes that her opinions are based on her education, training, and experience. *Id.* at 15. Although it's a slightly closer call than that made above, the Court concludes that Dr. Lawrence is qualified to testify that putting Hancock on a gluten-free diet would complicate his diagnosis. As Dr. Lawrence explained, a biopsy looks for inflammation caused by the response to gluten. Avoiding gluten before a biopsy would render the test results less valuable. This isn't highly specialized medical knowledge. Dr. Lawrence has this knowledge based on her training and years of experience in internal medicine managing patients with gastroenterological problems, so she can testify to it.

5

Defendants argue that Dr. Lawrence isn't qualified to opine on the professional standards for nurses. However, Dr. Lawrence directly supervised nurses at Adelanto. This, along with the work she has done supervising nurses "throughout her entire career," qualifies her to opine on this subject. *See Cooper v. Eagle River Mem'l Hosp., Inc.*, 270 F.3d 456, 462–63 (7th Cir. 2001) (holding that a doctor who held an administrative role in a clinic that employed nurse practitioners and several physician assistants could testify as to the nurses' standard of care.).

Defendants lastly argue that Dr. Lawrence is unqualified to testify about proximate cause. Specifically, they seek to prohibit Dr. Lawrence from testifying "that that any prolonged abdominal pain or discomfort experienced by Hancock is attributable to a gastroenterology diagnosis of celiac disease or non-celiac gluten sensitivity." Dkt. 165 at 9. Again, Dr. Lawrence isn't offering an opinion as to whether Hancock has celiac or non-celiac gluten sensitivity. But, given her experience in internal medicine, she is qualified to testify that a delay in care of the illness prolonged any suffering. This is general medical information that doesn't require specialist testimony.

### b. Admissibility

#### i. Dr. Lawrence's Opinions are not Inadmissible Legal Opinions

"An opinion is not objectional just because it embraces an ultimate issue." Fed. R. Evid. 704. However, legal opinions are not generally admissible. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013). "Generally, if the expert expresses an opinion using legal terms that follow the statutes related to the tort or

crime at issue, it is more likely to be held that the expert is giving a legal conclusion." 4 Weinstein's Federal Evidence § 704.04. However, if "an expert uses certain terms that also have legal import is not a reason, by itself, to bar his opinions provided those opinions relate to a central contested fact and the terms are common and in everyday usage." *Life Spine, Inc. v. Aegis Spine, Inc.*, No. 19 CV 7092, 2023 U.S. Dist. LEXIS 64938 at *5 (N.D. Ill. Apr. 13, 2023) (citation modified). Experts are free to opine on the appropriate standards of care and describe deviations from it. *United States v. Kohli*, 847 F.3d 483, 492 (7th Cir. 2017).

Under this standard, Defendants' argument that Dr. Lawrence offers inadmissible legal conclusions falls flat. She can opine that celiac disease and non-celiac gluten sensitivity are serious medical conditions and describe appropriate standards of care and any deviations from them. Specific testimony that Defendants were negligent or deliberately indifferent is inadmissible as the statements are legal conclusions using purely legal language.[1] Outside of those limited exceptions, Dr. Lawrence's conclusions are permissible.[2]

### ii. Standard of Care

Trying again to prevent Dr. Lawrence from testifying about the standard of care, Defendants argue that Dr. Lawrence offers impermissible lay testimony and

---

[1] Language issues can be worked out with motions in limine if the parties can't agree on the ground rules.

[2] Testimony about what a defendant should have known is inadmissible in relation to a deliberate indifference claim because a deliberate indifference claim requires subjective knowledge. *Elcock v. Davidson*, 561 F. App'x 519, 524 (7th Cir. 2014). Testimony about what a defendant should have known is irrelevant to that inquiry.

fails to properly define the standard of care or how Defendants have departed from it.

### 1. Dr. Lawrence's testimony about PA-C Kinnick's review of Hancock's records is partly admissible and partly inadmissible

Section A.1. of Dr. Lawrence's report discusses PA-C Kinnick's review of Hancock's medical records. In particular, Dr. Lawrence opines that PA-C Kinnick's failure to locate an abnormal bowel cascade delayed Hancock's medical treatment. Dr. Lawrence can testify about the standard of care for reviewing medical records and that not reviewing a record departs from that standard. *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 760 (7th Cir. 2004); *see also Johnson v. Armstrong*, 211 N.E.3d 355, 371-72 (Ill. 2022) (describing the importance of expert testimony in medical malpractice cases). However, Dr. Lawrence's opinion that "PA-C Kinnick consciously failed to perform a thorough review" of Hancock's records is inadmissible. So is testimony about the presence of the record in Hancock's medical file.

Dr. Lawrence is unfamiliar with the records system used by Thomson. Dkt. 165-1 at 117:8. There is no indication in her report that she relied on her expertise to opine about the presence of Hancock's abnormal test in the system. Instead, she makes common sense inferences. She also doesn't rely on any expertise to opine on PA-C Kinnick's mental state.

An expert's opinion isn't admissible if it's based on common sense rather than their expertise. *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 871 (7th Cir. 2001).

8

Such opinions aren't helpful to the jury, who are the ultimate common-sense experts. For these reasons, this portion of Dr. Lawrence's testimony is inadmissible.

### 2. Dr. Lawrence's opinion concerning PA-C Kinnick's alleged violation of the standard of care

Defendants argue that Dr. Lawrence fails to describe the standard of care violated by PA-C Kinnick's attitude and instead attacks his credibility. No doubt, Dr. Lawrence's report could be clearer. To some extent, her opinion suggests objective, unbiased, treatment is the standard of care. This makes sense. According to Dr. Lawrence, PA-C Kinnick's attitude prevented him from meeting that standard. But Dr. Lawrence is not a mind reader.  And she doesn't get to opine on credibility. Identifying the standard of care and identifying the departures from it is appropriate expert testimony. *Jimenez v. City of Chicago*, 732 F.3d 710, 721 (7th Cir. 2013) (quoting *West v. Waymire,* 114 F.3d 646, 652 (7th Cir.1997)). To the extent, Dr. Lawrence can identify a standard of care and the violation of that standard, her opinion is admissible. But Dr. Lawrence's testimony can't stray from this. She can't opine about credibility. And she can't characterize PA-C Kinnick's testimony or speculate about the abnormal tTG/DGP screen. But so long as she avoids those prohibitions, she can identify the standard of care and any departures from it. A better worded report would have been helpful in this regard.  But, perhaps, Dr. Lawrence was just making a credibility opinion in the report. If that's

9

what she was doing, she can't do that before the jury and her opinion will be barred.[3]

### 3. Dr. Lawrence's testimony about Dr. Hyder and Dr. Morgan is admissible

Defendants argue that Dr. Lawrence again fails to opine on the appropriate standard of care for Drs. Hyder and Morgan. Defendants identify an apparent contradiction between Dr. Lawrence's statement concerning the "gold standard" for tests diagnosing celiac disease and non-celiacs gluten sensitivity and her statement that Drs. Hyder and Morgan should have referred Hancock to a gastroenterologist. There is perhaps some contradiction here and Defendants are free to explore it on cross-examination. However, Dr. Lawrence's opinion indicates that the standard of care required Drs. Hyder and Morgan to refer Hancock to a gastroenterologist rather than a general surgeon. Although the opinion lacks some useful details about when such a decision needs to be made, the opinion is not so imprecise that it would confuse a jury. Dr. Lawrence's personal experience managing medical care at a federal detention facility plainly qualifies her to offer this opinion.

### c. Any Disclosure Violations are Harmless

Moving on from the Federal Rules of Evidence, Defendants argue that Dr. Lawrence's opinions should be barred because she failed to disclosure certain facts relied on in forming her opinion as required by the federal rules. *See* Fed. R. Civ. P.

---

[3] Defendant's motion seems to assume that Dr. Lawrence's report will be introduced at trial. Dkt. 165, at 25.  But expert reports are not admissible. *See Dean v. Wexford Health Sources, Inc.*, 18 F. 4th 214, 232 (7th Cir. 2021); *Wilson v. Wexford Health Sources, Inc.*, 932 F.3d 513, 522 (7th Cir. 2019). Indeed, as former Magistrate Judge Cole noted these reports are "hearsay in its most pristine form." *Sommerfield*, 254 F.R.D. at 328.

26(a)(2)(B)(ii). The rules require an expert to include "the facts or data considered by the witness" in forming their opinions. *Id.* If a witness fails to provide the required information, "the party is not allowed to use that information or witness … unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

According to Defendants, Dr. Lawrence relied on a database, "Up to Date," that wasn't disclosed in discovery. Hancock argues that Dr. Lawrence didn't need to disclose her use of Up to Date and that any disclosure failures were harmless anyway. Defendants don't discuss whether any failure to disclose caused them harm. In fact, Defendants' counsel spent a considerable amount of time deposing Dr. Lawrence about her reliance on Up to Date. By doing so, any failure by Dr. Lawrence was harmless. Indeed, the Court's own standing order specifically tells counsel that they should give serious thought as to whether they should depose experts for this very reason. *See* Parties' Proposed Case Management Order, p. 2 *citing* Gregory P. Joseph, *The Temptation to Depose Every Expert*, 40 A.B.A. Sec. Litig. 1 (2014); William Cirignani, *The Case for Not Taking Defense Expert Depositions*, 18 Trial Journal 20 (Winter 2016). Given the circumstances, whether Dr. Lawrence was required to disclose her use of Up to Date, any failure was harmless.

A district court has broad discretion in deciding whether a disclosure violation is harmless. *King v. Ford Motor Co.*, 872 F.3d 833, 838 (7th Cir. 2017). But four factors are particularly important: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the

11

prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Defendants had *months* between Dr. Lawrence's deposition and the close of expert discovery. They had the opportunity to ask for additional discovery but chose not to seek additional information related to Up to Date. The most reasonable inference for this failure is that they extensively deposed Dr. Lawrence about Up to Date and her reliance upon it. There is no disruption to trial or evidence of bad faith. Accordingly, there is no reason to bar Dr. Lawrence's opinions based on the alleged disclosure violations.

### C. Other Witnesses

Defendants seek to expand their *Daubert* motion to bar certain other witnesses. Defendants seek to bar Dr. Shahid from providing opinion testimony. In response, Hancock disclaims any intention to call Dr. Shahid as an expert. Accordingly, Defendants' motion is unopposed and granted.

Finally, Defendants seek to exclude Drs. Campbell and Adams. Hancock's counsel claim they first became aware of Drs. Campbell and Adams when Hancock's recent medical records were disclosed to his counsel during a September 30, 2025 settlement conference. Dkt. 169 at 27. However, Drs. Campbell and Adams treated Hancock. He knew who his doctors were and could have shared that information with his legal team. What's more, fact discovery closed in August 2024. Dkt. 106. Absent a motion to reopen discovery, there is no basis for permitting Drs. Campbell

and Adams to testify. This action was filed in 2022. Medical treatment two years after the lawsuit's start date would presumably be irrelevant. For those reasons, the Court will not admit testimony from Drs. Campbell and Adams.

## Conclusion

Dr. Lawrence is qualified to offer the opinions in her report. Her opinions are admissible to the extent identified in the opinion. Any disclosure violations were harmless. Defendants' motion to exclude expert testimony from Dr. Shahid is granted. Defendants' motion to exclude Drs. Campbell and Adams is granted.


Entered: June 17, 2026                          By: _____
                                                      Iain D. Johnston
                                                      U.S. District Judge

13